**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re:                                                        **FOR PUBLICATION**

             SHAMEKA WATSON,                    Chapter 7
                                                  Case No. 18-10164 (MG)

                         Debtor.
----------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S MOTION TO**
**PROHIBIT EVICTION UNDER SECTION 525's NON-DISCRIMINATION**
**PROVISION FOR NONPAYMENT OF PREPETITION**
**DISCHARGED RENT AND LIFTING THE STAY**

*A P P E A R A N C E S :*

LEGAL SERVICES PLAN – LOCAL 237
*Attorneys for Debtor Shameka Watson*
216 West 14th Street
New York, NY 10011
By:    Mary E. Sheridan, Esq.
         Kenneth R. Perry, Esq.

HORING WELIKSON ROSEN & DIGRUGILLIERS P.C.
*Attorneys for Bryant Avenue Associates I LP*
11 Hillside Avenue
Williston Park, NY 11596
By:    Randi B. Gilbert, Esq.
         Richard T. Walsh, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

      This Opinion addresses the important issue whether Bankruptcy Code Section 525's

antidiscrimination provision, prohibiting a governmental unit from evicting a debtor on the basis

of nonpayment of prepetition discharged rent, applies to a private landlord participating in the

Section 8 Housing Choice Voucher Program (the "Section 8 Program").  Bryant Avenue

Associates I LP ("Landlord" or "Bryant Associates") seeks to evict Shameka Watson ("Debtor")

from her Section 8 subsidized apartment in state court (the "State Court Eviction Proceeding")

based on her failure to pay both prepetition discharged rent and post-petition rent.  If section 525

does not apply to the Landlord, section 365(d)(1) required the Debtor to cure all prepetition rent arrears in order to assume her residential lease, or the lease is "deemed rejected."  11 U.S.C. § 365(d)(1).  As explained below, section 525(a) prevents a "governmental unit" from revoking or refusing to renew a lease because a debtor has not paid discharged debt.  *See* 11 U.S.C. § 525(a).

The Debtor filed an order to show cause and accompanying motion to reopen her chapter 7 case and stay the State Court Eviction Proceeding because Landlord allegedly violated this Court's discharge injunction by seeking to evict the Debtor based on prepetition discharged rent arrears.[1]  ("Motion," ECF Doc. # 10.)  The Debtor also argued that any further attempts by Landlord to evict her based on discharged rent would be discriminatory under section 525 of the Bankruptcy Code, which protects a debtor from discriminatory treatment by a governmental unit. At a hearing before this Court, when asked by the Court, the Landlord's counsel would not agree to limit the State Court Eviction Proceeding to solely post-petition rent arrears.  Accordingly, this Court entered an order reopening the Debtor's chapter 7 case, imposing a stay on the State Court Eviction Proceeding, and providing that in due course the Court would issue an opinion addressing whether section 525's non-discrimination provision applies to Bryant Associates, a private landlord participating in the Section 8 Program.  This is an important issue of bankruptcy law on which there is a split in lower court decisions.

For the reasons explained below, the Court concludes that section 525(a)'s nondiscrimination provision does not apply to the Landlord.  Accordingly, the Debtor's lease was terminated as a matter of law because it was "deemed rejected" due to the Debtor's failure to timely cure the prepetition arrears.  11 U.S.C. § 365(d)(1).  The stay imposed by this Court on December 17, 2019 is lifted and the Landlord may proceed with the State Court Eviction

---

[1]    The Debtor's counsel agreed that the Landlord can seek to evict the Debtor based solely on the post-petition rent arrears.

Proceeding against the Debtor based on prepetition and post-petition arrears (after the stay of this

Court's decision expires, *see* Section IV, *infra*).  The prepetition arrears were discharged as a

personal liability of the Debtor, however, and the Landlord may not take any action now to

recover the discharged debt.

## I.    BACKGROUND

### A.  Debtor's Bankruptcy Proceedings

On January 24, 2018, the Debtor filed a voluntary chapter 7 petition.  ("Voluntary

Petition," ECF Doc. # 1.)  At the time the Debtor filed her Voluntary Petition, and at all times

thereafter, the Debtor rented an apartment located at 1119 Bryant Avenue, Apt. 6C, Bronx, NY

10469 (the "Property") from Bryant Associates, owner of the Property.  (Motion ¶ 4.)  Bryant

Associates is a private owner of residential property that entered into an agreement with the U.S.

Department of Housing and Urban Development ("HUD"), allowing the Landlord to administer

the Property as low-income housing in exchange for Section 8 Program subsidies.  ("Landlord

Opposition," ECF Doc. # 14 ¶¶ 1–2.)  The Debtor is required to pay $1,350 per month in rent to

Bryant Associates, and the balance of the rent is paid by HUD in the form of subsidies to Bryant

Associates.  (*Id.* ¶¶ 3–4, 6.)  The Debtor's lease is renewed each year pursuant to a recertification

process in which she certifies her income and household composition.  (*Id.* ¶ 5.)  The Debtor is a

single mother living in the Property with her fifteen-year old daughter.  (Motion ¶ 5.)

When the Debtor commenced her chapter 7 case, she was a defendant in an eviction

proceeding filed Bryant Associates in Bronx Housing Court under Index No. L&T 55189/2017

for nonpayment of rent on the Property.  (*Id.* ¶ 6.)  Bryant Associates was listed as a creditor on

the Debtor's Schedule E/F, holding an unsecured claim in the amount of $22,281.  (Voluntary

Petition at 21.)  On April 19, 2018, the Court entered an order discharging the Debtor pursuant to

3

Bankruptcy Code section 727 and closing the Debtor's case. ("Discharge of Debtor and Order of Final Decree," ECF Doc. # 8.) Pursuant to the Discharge of the Debtor and Order of Final Decree, the Debtor's prepetition rent obligations to Bryant Associates were discharged. (*Id.*) The chapter 7 case was closed on April 24, 2018. On May 24, 2018, the Bronx Housing Court eviction proceeding was discontinued. (Motion ¶ 9.)

On July 29, 2018, Bryant Associates' managing agent sent the Debtor a demand for payment, seeking payment of the prepetition discharged rent, in addition to post-petition rent, together then totaling $39,922.[2] (*Id.* ¶ 10.) On September 3, 2019, Bryant Associates began a new nonpayment proceeding in Bronx Housing Court under Index. No. L&T 38466/2019—*i.e.*, the State Court Eviction Proceeding—seeking to evict the Debtor from the Property based on both prepetition discharged rent arrears and post-petition rent arrears.[3] (*Id.* ¶ 11.) The Fourteen Day Demand Notice, attached as an exhibit to the Motion, shows that the total rent due at that time was $42,622 ($19,735 in prepetition, discharged rent and $22,887 in post-petition rent). ("Fourteen Day Demand Notice," ECF Doc. # 10-5 at 3.)

On November 6, 2019, the Debtor filed a proposed Order to Show Cause and accompanying Motion seeking entry of an order: (1) reopening the chapter 7 bankruptcy case

---

[2]    The July 29, 2019 demand for payment stated, in relevant part, that "the Landlord has failed to receive payment of your rent due to date in the sum of $39,922.00 and it is now than (*sic*) five days since the rent became due. Please make payment to the undersigned Landlord in order to avoid legal action." Section 524(a)(2) of the Bankruptcy Code provides, in relevant part, that a discharge "operates as an injunction against . . . an act to collect, recover or offset any such debt as a personal liability of the debtor . . . ." The Debtor has not raised the issue whether sanctions should be imposed on the Landlord for violating the discharge injunction by demanding payment of discharged prepetition rent.

[3]    The September 3, 2019 Petition initiating the State Court Eviction Proceeding, unlike the July 29, 2019 demand for payment, included that following language: "[D]espite the discharge in bankruptcy, a landlord can still avail itself of its statutory remedy to recover possession of the premises for nonpayment of rent. Landlord is not attempting to collect a dischargeable debt. Landlord will relinquish all entitlement for a money judgment of all dischargeable rent after trial but reserves the right to recover possession of the premises for nonpayment." (*See* Landlord Opposition, Ex. D.) Thus, the State Court Eviction Proceeding seeks to recover possession of the Property but not to recover the discharged debt.

4

pursuant to Bankruptcy Code section 350 and Federal Rule of Bankruptcy Procedure 5010 and

(2) imposing the automatic stay pursuant to Bankruptcy Code sections 524(a)(2) and 105 to stay

the State Court Eviction Proceeding.  (Motion ¶ 2.)  The Debtor's Motion argued that there was

sufficient cause to reopen the Debtor's case because of Bryant Associates' pending State Court

Eviction Proceeding to evict the Debtor based on both the prepetition discharged debt for unpaid

rent in the amount of $19,735, and unpaid post-petition rent in the amount of $22,887.  (*Id.* ¶ 19.)

The Debtor's counsel maintained that eviction based solely on prepetition discharged debt

violates section 524's discharge injunction.  (*Id.* ¶¶ 18–19.)  On November 13, 2019, the Court

entered an Order to Show Cause ordering Bryant Associates to show cause at a hearing on

December 17, 2019 why this Court should not enter the Order to reopen the case and reimpose

the automatic stay.  ("Order to Show Cause," ECF Doc. # 13.)

At the December 17, 2019 hearing, the Debtor's counsel acknowledged that the State

Court Eviction Proceeding against the Debtor could go forward based solely on the post-petition

unpaid rent of $22,887.[4]  Bryant Associates' counsel, however, would not agree to limit the State

Court Eviction Proceeding solely to unpaid post-petition rent.  Because Bryant Associates'

counsel planned to proceed in the State Court Eviction Proceeding based on both prepetition

discharged rent and post-petition rent, the Court found cause existed to grant the Debtor's

Motion to reopen the case.  The Court also reimposed a stay to prevent Bryant Associates from

proceeding with the State Court Eviction Proceeding, or any other action against the Debtor,

pending further order of the Court regarding section 525(a)'s applicability to Bryant Associates.

("Order to Reopen," ECF Doc. # 17.)

---

[4]      The Debtor's counsel said he hoped the Debtor would be able to avoid eviction by paying all post-petition
rent arrears; he indicated that the Debtor could not pay both prepetition and post-petition arrears.

Having found cause to reopen the Debtor's case and reimpose the stay, the Court now addresses the Debtor's argument that section 525(a) of the Bankruptcy Code applies to private landlords, such as the Landlord in this case, in connection with Section 8 subsidized housing in which the Debtor resides.

### B.  The Section 8 Program

By way of background, the Debtor cites to the HUD webpage providing information on the Section 8 Program.  (Motion ¶ 45 (citing U.S. Department of Housing and Urban Development, *Section 8 Program Background Information*, available at: hud.gov/program_offices/housing/mfh/rfp/s8bkinfo) (last visited Jan. 22, 2020).)  The Section 8 Program helps low-income families afford decent, safe and sanitary housing in the private market.  Under the Section 8 Program, the landlord and tenant enter into a HUD form lease, and at the same time, the landlord and public housing authority sign a Housing Assistance Payment ("HAP") contract that runs for the same term as the lease.  The HUD form lease between the tenant and landlord lasts for one year, and the lease generally provides for automatic renewal unless the tenant defaults.  (*See id.*)  The landlord may terminate a tenant's lease for non-compliance, failure to abide by any State or local landlord and tenant law, or other good cause.  (*See id.*)

Pursuant to the HAP contracts, HUD provides Section 8 rental subsidies to the owners of certain mortgaged properties in an amount equal to the difference between the HUD approved rent for an assigned unit and the HUD required rental contribution from eligible tenant families.  (*Id.*)  The tenant is then responsible to the landlord for the remaining rent based on their income.  (*Id.*)  The HAP contracts also impose certain obligations on landlords receiving Section 8 subsidies.

6

### C.  Debtor's Motion

The Debtor argues that Bryant Associates is a "governmental unit" within the meaning of section 525(a) and is therefore barred from evicting the Debtor for non-payment of discharged rent.  (Motion ¶¶ 32–39, 44.)  An analysis of the law focusing on the interplay between sections 525(a) and 365 is discussed in sections II.A. and II.B. below.  In support of her argument, the Debtor's counsel points to the following evidence showing that Bryant Associates is a governmental unit subject to section 525's non-discrimination provision:

- Debtor's tenancy and Bryant Associates' ownership of the building is wholly subject to HUD's subsidies, rules, and regulations (*id.* ¶ 32);

- HUD's pervasive influence and involvement in the management of Bryant Associates (*id.* ¶ 40);

- Section 8 was created by federal statute and is codified at 42 U.S.C. § 1437(f) (*id.* ¶ 41);

- The building owners participating in the Section 8 Program receive subsidies from HUD in exchange for managing the building in accordance with HUD's rules and regulations (*id.* ¶ 42);

- The Section 8 Program is governed by the *HUD Handbook*, whichcovers nearly every aspect of building management (*id.* ¶¶ 43–44);

- HUD's HAPs contracts with the Section 8 building owners establish several conditions for accepting HUD's subsidies, including leasing of assisted units to Section 8 income eligible families, maintaining the project in safe and sanitary conditions, compliance with Section 8 reporting, management, and accounting requirements, and prior approval from HUD before transferring the project or assigning the HAP contract (*id.* ¶ 45);

- If the building owner fails to cure any defaults under those contracts, HUD may take several possible remedial actions against the building owner (*id.* ¶ 56);

- HUD creates specific requirements for tenant eligibility in Section 8 houses (*id.* ¶ 46);

- HUD provides tenant eligibility requirements, but places enforcement of those requirements on its project-based owners (*id.* ¶ 47) and the owner must recertify the tenant's eligibility to HUD annually (*id.* ¶ 48);

- Bryant Associates' website states that the management company is funded in part by HUD (*id.* ¶ 55); and

- If the project owner fails to cure any defaults, HUD may take remedial actions against the project owner, including taking possession of the project.  (*Id.* ¶ 56.)

The Debtor relies on the above facts to demonstrate substantial entwinement between HUD and Bryant Associates' building management.  (*Id.* ¶¶ 32–55.)

Assuming Bryant Associates is a governmental unit, the Debtor's Motion highlights a conflict between section 525's non-discrimination provision regarding residential leases with governmental units and section 365, which permits a landlord to evict a tenant from a rejected lease for nonpayment of discharged prepetition rent.  (*Id.* ¶ 29.)  Citing Second Circuit case law, the Debtor's counsel contends that "when sections 365(b) and 525(a) come 'foot to foot' in the public housing context, section 365(b) must step aside to let section 525(a) pass."  (*Id.* ¶ 31 (citing *Stoltz v. Brattleboro Hous. Auth. (In re Stoltz)*, 315 F.3d 80, 95 (2d Cir. 2002)).)

### D.  Landlord's Opposition

Landlord's Opposition denies that Bryant Associates is a governmental unit.  Instead, Bryant Associates argues that it is a limited partnership formed under New York law in December 2009 for the purpose of owning and renting apartment buildings.  (Landlord Opposition ¶ 1.)  Bryant Associates then entered into an agreement with HUD pursuant to which Bryant Associates would provide low income housing in exchange for Section 8 subsidies.  (*Id.* ¶ 2.)

In response to the Debtor's non-discrimination argument, Bryant Associates states that it is not a "governmental unit" within the meaning of section 525 because private landlords participating in a federal subsidy program are not included in the Bankruptcy Code's definition of a "governmental unit."  (*Id.* ¶¶ 75, 79.)  While the Debtor's Motion shows that Bryant

8

Associates does comply with federal housing mandates, the Motion does not establish that HUD

or any other government agency completely oversees the building's operation and

administration.  (*Id.* ¶ 86.)  Bryant Associates receives funding as a federal subsidy program and

has freedom, as a private entity, to decide whether to participate in that relationship.  (*Id.* ¶ 87.)

For example:

- New York City does not have any ownership interest over Bryant Associates (*id.* ¶ 85);

- Bryant Associates is not required to renew its contract with HUD, and instead, as a private entity can decide whether to participate in the Section 8 Program (*id.* ¶ 87);

- Bryant Associates was formed under New York law and neither HUD nor any other state housing agency had any involvement in or set guidelines for how, when or where Bryant Associates was formed (*id.* ¶ 92);

- Bryant Associates' building is operated entirely by private employees of Bryant Associates, who are not involved in subsidy programs (*id.* ¶ 100);

- Bryant Associates is responsible for determining who its tenants will be and for operating the building, even though it is contractually obligated to follow HUD guidelines in certain respects (*id.* ¶ 102);

- HUD does not have the authority to dissolve Bryant Associates for failure to comply with any regulations or guidelines (*id.* ¶ 109); and

- Bryant Associates does not have sovereign immunity and can be subjected to the same liabilities as other private landlords.  (*See id.* ¶¶ 104–105.)  Accordingly, Bryant Associates' inclusion in the federal housing program alone does not lead to the conclusion that Bryan Associates is acting as a governmental unit subject to section 525.  (*Id.* ¶ 123.)

Lastly, Landlord's Opposition provides that even if the Court finds that Bryant

Associates is a governmental unit, section 525 has not been violated because Bryant Associates

has not discriminated against the Debtor based on her failure to pay discharged debt.  (*Id.* ¶ 136.)

Bryant Associates continued to act as a landlord to the Debtor, even after her prepetition rent

obligations were discharged.  (*Id.* ¶ 143.)  The Debtor thereafter defaulted on her obligations to

pay rent in a timely manner, and Bryant Associates subsequently elected to pursue its statutory

remedy to recover post-petition arrears.  (*Id.* ¶ 145.)  Thus, the outstanding arrears serving as a

basis for the Debtor to argue discrimination arose after the Debtor's prepetition rent was

discharged.  (*Id.* ¶ 137.)

### E.  Debtor's Reply

The Debtor's Reply relies heavily on *In re Oksentowicz*, 314 B.R. 638 (Bankr. E.D.

Mich. 2004), to argue that section 525 applies to a private landlord participating in the Section 8

Program.  There, the court found that cases which "concluded that entities which merely receive

public funds and are subject to governmental regulations do not qualify as governmental units

did not adequately analyze the government's involvement.  Nor did they consider that the entity

was carrying out a governmental function—providing low income housing."  *Id*. at 642 (internal

quotation marks and citations omitted).

## II.   <u>LEGAL STANDARD</u>

Section 365 of the Bankruptcy Code permits non-governmental unit landlords to exercise

the state law remedy of eviction with respect to rejected leases.  *See In re Marcano*, 288 B.R.

324, 331 (Bankr. S.D.N.Y. 2003).  The Debtor argues, however, that section 365 must give way

to section 525 because Bryant Associates, as an alleged governmental unit, cannot evict the

Debtor for failure to pay discharged rent under section 525's non-discrimination provision.  The

Court therefore examines the conflict between both provisions and whether section 525 applies

to Bryant Associates as a participant in the Section 8 Program.

### A.  Section 525's Non-Discrimination Provision

The Court first addresses the protection afforded to debtors by section 525(a)'s non-discrimination provision.  Section 525(a) provides in pertinent part that:

> [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license . . . or other similar grant [or] . . . discriminate with respect to such a grant against . . . a person that is or has been a debtor under this title . . . solely because such bankrupt or debtor is or has been a debtor under this title . . . or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a).

Section 525's antidiscrimination provision thus prohibits a governmental unit from discriminating against a person with respect to certain grants solely because that person has a debt discharged under the Bankruptcy Code.  *See id.*  Courts in this Circuit applying section 525 have found that it protects tenants in governmental units from eviction based on prepetition discharged rent.  *See In re Stoltz*, 315 F.3d at 92; *In re Marcano*, 288 B.R. at 331.

The Bankruptcy Code defines a "governmental unit" as "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States . . . , a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government."  11 U.S.C. § 101(27). Section 101(27)'s legislative history suggests that the term "governmental unit" should be construed broadly.  *See In re Marcano*, 288 B.R. at 332; *see also In re Stolz*, 315 F.3d at 92 n.6 (explaining that the "legislative history [of Section 101(27)] specifically rejects a narrow construction of the antidiscrimination provision").  Applying a broad construction, courts hold that federal credit unions, transit authorities, liquor authorities, and publicly funded housing authorities, such as the New York City Housing Authority ("NYCHA"), qualify as governmental units under sections 101(27) and 525.  *See In re Marcano*, 288 B.R. at 332–33; *see also Uplinger*

11

*v. U.S. Investigation Servs., Prof'l Servs. Corp., Inc. (In re Uplinger)*, Adv. No. 11-01341, 2012 WL 194621, at *3 (Bankr. E.D. Va. Jan. 20, 2012); *In re Bacon*, 212 B.R. 66, 70 (Bankr. E.D. Pa. 1997) (noting that "cases that have applied § 525(a) in the public housing context have concluded, usually without much discussion, or appear to assume without any discussion, that public housing is a governmental grant").

A less settled question, however, is whether a private landlord receiving Section 8 Program subsidies also qualifies as a "governmental unit."  The Second Circuit suggested that a private entity does not become a "governmental unit" merely because it participates in a subsidized housing program regulated by the federal government.  *See In re Stoltz*, 315 F.3d at 90 n.5 ("Section 8 leases . . . *arguably* do not fall within the protection of section 525(a) because they are government-subsidized leases for privately owned housing units between a qualifying tenant and a private landlord."  (emphasis added)).  Other courts have applied similar reasoning. *See In re Marcano*, 288 B.R. at 337 ("Those cases that have construed the term 'governmental unit' in the housing context have also rejected the proposition that a private landlord is a 'governmental unit' even if it receives a Federal rent subsidy."); *In re Ward,* No. 12–23039–BKC–RAM, 2012 WL 2920123, at *1 (Bankr. S.D. Fla. July 16, 2012) ("Although § 525(a) of the Bankruptcy Code precludes public housing authorities from evicting Chapter 7 debtors who are seeking to discharge prepetition rent obligations, . . . public housing tenants or tenants, like the Debtor here, who are receiving rent subsidies, may be evicted, or have their section 8 rights terminated, based on other violations."); *In re Valentin*, 309 B.R. 715, 720 n.7 (E.D. Pa. 2004) ("This matter does not involve Section 8 housing in which the government subsidizes leases for privately owned housing units.  In such a case, the entity providing housing would not be considered a governmental unit and section 525(a) would not be applicable."); *In re Rosemond*,

105 B.R. 8, 9 (W.D. Pa. 1989) (holding that a private landlord participating in the Section 8

Program was not a governmental unit subject to section 525).

Two bankruptcy court decisions from other circuits are also instructive in this regard.  In

*Spruce Ltd. P'ship v. Lutz (In re Lutz)*, 82 B.R. 699 (Bankr. M.D. Pa. 1988), the court considered

whether a limited partnership participating in a subsidized housing program regulated by HUD

was a "governmental unit" subject to section 525's antidiscrimination provision.  There, the

limited partnership owning residential property entered a lease directly with tenants on a HUD

approved form, and the landlord received a subsidy from HUD.  *See id.* at 700–01.  The tenant's

rent was determined by a HUD formula that varied depending on the tenant's income.  *Id.*  After

tenants of the limited partnership failed to make rental payments, the private landlord brought an

eviction proceeding, and the tenants subsequently filed for bankruptcy protection.  *See id.* at 701.

On a motion to lift the automatic stay and proceed with the eviction proceeding, the court found

that while the term "governmental unit" was construed broadly, it was "unaware of any cases . . .

in which the term 'governmental unit' was held to apply to private entities which merely receive

public funds and are subject to governmental regulations."  *Id.* at 702.  The court further stated

that "although the [private landlord] receives a subsidy from HUD, it does not extend HUD

money to the debtor and it does not collect any funds from the debtor on behalf or for the benefit

of the government.  The debtor's failure to pay their prepetition rent, thus, harms [the private

landlord], not the government."  *Id.* at 703.  Accordingly, the court held that the private landlord

was not a "governmental unit."  *Id.*

In *In re Liggins*, 145 B.R. 227 (Bankr. E.D. Va. 1992), the court also analyzed whether a

limited partnership that owned residential housing and participated in a federal subsidy program

was a "governmental unit."  The debtor argued that section 365's requirements did not apply to

its proposed plan because the private landlord was a "governmental unit" under section 525. *See id.* at 231. The court found, however, that section 101(27):

> does not include language suggesting the inclusion of private entities . . . which merely receive public funds and are subject to governmental regulations. The legislative history of Section 101(27) supports this conclusion because, although it states that the phrase is defined in the broadest sense, the entity in question must be actually carrying out some governmental function . . . . The history thus indicates the entity must do more than merely receive government funds.

*Id.* at 232 (internal quotation marks and citations omitted). The court therefore held that the landlord was not a governmental unit under section 525. *See id.*

Notwithstanding the case law discussed above, in *In re Marcano*, 288 B.R. at 324 and *In re Oksentowicz*, 314 B.R. at 638, two courts have found that private entities participating in housing programs regulated by city and federal governments were "governmental units" under section 525 because of substantial entwinement between the private entities and the government.

In *Marcano*, the court consolidated a pair of cases with similar issues. The first case examined whether a private tenant association that entered into a lease with New York City to maintain and manage a City-owned building pursuant to a Tenant Interim Lease Program ("TIL") is a "governmental unit" under section 525. 288 B.R. at 326–27. The tenant association used all rental income to pay operating expenses and maintain the building, while the City's Department of Housing Preservation and Development funded the buildings rehabilitation costs. *See id.* The Court held that the landlord was a "governmental unit" because there was substantial entwinement between the City and the tenant association. *See id.* at 335. Of relevance, the building was owned by New York City; the City controlled the landlord's activities through the TIL program with respect to setting tenants' rent and approving rent increases; the tenants were subject to the terms and conditions of the TIL program, there was not a written lease with building management; the City could access tenant's bank accounts and records; and the City

14

could inspect the building's leases without prior notice to the lessee.  *See id.* at 334–35.  The

court concluded that such entwinement between the landlord and the City demonstrated that the

tenant association was a "governmental unit" under section 525.  By contrast, in the second case,

the court found that a non-profit providing homeless services with government funds did not

carry out a sufficiently public function—namely, through its tax-exempt status and services

provided to the state—to render it a governmental unit.  *See id.* at 337.

In *Oksentowicz*, the court considered whether a privately-owned apartment complex

participating in the Section 8 Program discriminated against debtor by rejecting his rental

application after his debts were discharged in bankruptcy.  Relying on *In re Marcano*'s holding,

the court found that the following facts demonstrated substantial entwinement between the

landlord participating in the Section 8 Program and the government:

> (1) [The landlord] is required to provide low income-senior housing
> for the entire term of its [contract]; (2) [the landlord] is required to
> determine eligibility of applicants and rent charged according to
> guidelines set forth by HUD . . . (3) HUD controls the nature of the
> services provided in the rent, what utilities are included, and what
> equipment is to be provided in the apartments . . . (4) HUD sets forth
> the grounds for eviction and the procedures to be taken for eviction
> . . . (5) HUD can take over and continue the business of [the
> landlord] if it defaults on the contract . . . and (6) the government,
> through its HUD website, advertises [the landlord] for government
> subsidized housing.  Additionally, HUD requires property owners
> to participate in an Affirmative Fair Housing Marketing Plan . . .
> HUD requires property owners to develop and make public written
> tenant selection policies and procedures that include description of
> eligibility requirements and income limits for admission . . . HUD
> mandates that the Tenant Selection Plans contain screening criteria
> that include standards prohibiting admission of those who have
> engaged in drug-related criminal activity . . . HUD sets forth the
> procedures for rejecting a tenant application . . . HUD requires
> property owners to use leases that are in a form acceptable to HUD.

314 B.R. at 641.

15

The court also noted that the private landlord carried out a governmental function by providing low income housing, and HUD had a substantial influence over the landlord's decisions with respect to tenant eligibility, apartment maintenance, rent collection, and house rules. *See id.* at 641–42.

Finally, to prevail under section 525's antidiscrimination provision, the debtor must establish that the discriminatory action was taken "solely because" of the debtor's prior bankruptcy filing. *See* 11 U.S.C. § 525(a). In *In re Stoltz*, the public housing authority defended against debtor's section 525 claim by arguing that the eviction action was premised solely on debtor's breach of the public housing lease, not failure to pay prepetition rent previously discharged in bankruptcy. *See* 315 F.3d at 91. The Second Circuit found that the housing authority's argument offered a distinction with no real difference. The court noted, however, that "[h]ad [debtor] breached the lease by failing to comply with an enumerated tenant duty other than the duty to pay prepetition rent, [the housing authority] might have a permissible basis for eviction under section 525(a)." *Id.* at 91–92.

## B.  Section 365's Assumption or Rejection of an Unexpired Lease

A residential lease is property of the bankruptcy estate in a chapter 7 case. *See* 11 U.S.C. § 541. Section 365(d)(1) governs the assumption or rejection of an unexpired lease of residential real property in a chapter 7 case. Section 365(d) provides that if a chapter 7 trustee "does not assume or reject an . . . unexpired lease . . . within sixty days after the order for relief," then the lease is deemed rejected. *See* 11 U.S.C. § 365(d)(1). "Upon rejection, the lease is no longer part of the bankruptcy estate, and the non-debtor party to the contract may generally pursue state law remedies for breach of contract, including eviction for breach of lease." *In re Stoltz*, 315 F.3d at 86. Thus, section 365 authorizes landlords to pursue the state law remedy of eviction with

16

respect to rejected leases where the tenant fails to fulfil the covenant to pay rent. *See In re Marcano*, 288 B.R. at 331.

### C. The Interplay Between Sections 365 and 525 With Respect to Governmental Units

In *In re Stoltz*, the Second Circuit addressed the conflict between section 525(a), which protects debtor-tenants in governmental units from eviction for nonpayment of discharged prepetition rent, and section 365, which permits landlords to pursue state law remedies after a lease is deemed rejected and the debtor fails to cure prepetition obligations.  315 F.3d at 86.  *In re Stoltz* concerned a debtor residing in government subsidized housing owned by the federal housing authority seeking to evict her for failure to pay rent.  *Id.* at 84.  After finding that the housing authority was a "governmental unit" under section 525, the court ruled that "when sections 365(b) and 525(a) come 'foot to foot' in the public housing context, section 365(b) must step aside and let section 525(a) pass."  *Id.* at 95.  The court reasoned that this approach furthered the purposes of the Bankruptcy Code intended to provide debtors with a "fresh start" and to "ensure that governmental units do not deprive debtors of grants that are essential to [their] fresh start."  *Id.* at 94–95.

### III.    DISCUSSION

Landlords participating in the Section 8 Program, like Bryant Associates, are not governmental units subject to section 525's non-discrimination provision.  The reasoning articulated by the court in *In re Lutz*, 82 B.R. 699, is applicable here.  In *Lutz*, the court found that a private landlord participating in a subsidy program with HUD, similar to the Section 8 Program, was not a "governmental unit" under section 525.  The court stressed that "HUD makes no payment to [landlord's] tenants and the tenants make no rental payments to or for the benefit of HUD."  82 B.R. at 701.  Thus, "[a]lthough [the landlord] receives a subsidy from HUD, it

17

does not extend HUD money to the debtor and it does not collect any funds from the debtor on

behalf of or for the benefit of the government." *Id*. at 703. The landlord was therefore not a

governmental unit because a tenant's failure to pay rent harms the landlord directly, not the

government.

        The same reasoning applies to the present case because Bryant Associates bears the loss

for its tenants' failure to pay rent. Pursuant to the Section 8 Program, Bryant Associates' tenants

must pay Bryant Associates a share of the apartment's rent commensurate with their income.

The remaining rent is paid to Bryant Associates by HUD in the form of a subsidy. Bryant

Associates' tenants do not pay HUD and HUD does not pay Bryant Associates' tenants. Rather,

if a tenant fails to pay their share of the rent, Bryant Associates suffers. Thus, even though

Bryant Associates receives public funds from HUD in the form of subsidies and is subject to

government regulation, Bryant Associates does not act on behalf of or for the benefit of the

government.

        The Court also finds persuasive Bryant Associates' argument that it is not a governmental

unit because it is not obligated to participate in the Section 8 Program; it merely chooses to do

so. Bryant Associates' freedom to decide whether to continue participating in the Section 8

Program shows that it operates independently from the government, and only receives public

funds subject to federal regulation when it renews its one-year lease with Section 8 tenants. This

arrangement is different from a public housing authority whose tenancies are subject to leases

obtainable only from the government. *See In re Stoltz*, 315 F.3d at 90.

        The Court is also mindful of the important and necessary role that Bryant Associates and

other landlords play in providing affordable housing to low-income residents by choosing to

participate in the Section 8 Program. Holding that Bryant Associates is a governmental unit

subject to section 525's non-discrimination provision would threaten the Section 8 Program by discouraging private landlords from participating in the program for fear that tenants with substantial arrears could file for bankruptcy to prevent their landlords from pursuing the state law remedy of eviction. These facts weigh in favor of finding that the Section 8 Program does not transform Bryant Associates from a private entity to a governmental unit subject to section 525.

The Court declines to follow the decision in *In re Okstenkowicz*, 314 B.R. 638. There, the court found that there was substantial entwinement between the government and the Section 8 landlord because of facts analogous to those present here, such as: the landlord determines applicant eligibility, HUD sets forth the grounds for eviction, and HUD controls the nature of services provided in the rent. 314 B.R. at 641. The court did not consider, however, that the private landlord bears the harm for a tenant's failure to pay rent under the Section 8 Program or that the landlord can choose whether to participate in the Section 8 Program. The Court concludes that these facts are dispositive because they demonstrate that the government does not completely oversee and control the operation, administration, and maintenance of a Section 8 landlord's tenancies.

Furthermore, the *Okstenkowicz* court's heavy reliance on *In re Marcano*, 288 B.R. 324, to hold that a Section 8 private landlord is a governmental unit was misplaced. The *Marcano* court found that a private tenant association acting as a landlord for a New York City-owned building was a governmental unit because of the government's substantial control over the landlord's management and operations. The control exerted by the government over the tenant association, however, far exceeds the level of entwinement between HUD and a Section 8 Program landlord. Unlike the relationship between HUD and Section 8 landlords, the *Marcano* court stated that the City owned the building at issue, the City could access tenant bank accounts, the City had

19

unhindered access to the premises, the tenant association could purchase the building from the City at a later date, the City supervised all of the tenant association activities, and the City could inspect the building's leases, records and bills without prior approval. *See* 288 B.R. at 333–35. Moreover, the court found dispositive that, unlike in the present case or *In re Okstenkowicz*, the rent arrears prompting the eviction were owed to the City before the tenant association was formed. *See id.* at 335–36. Thus, "[t]he [tenant association's] ability to collect the arrearages would be a windfall, and [the tenant association] is truly a surrogate for the City in its non-payment proceeding against the Marcanos." *Id.* at 336. Taken together, these facts evidence far more involvement by the government in the tenant association's operations and management than the facts presented here or in *In re Okstentowicz*. In particular, the government has no ownership interest over Bryant Associates' building and the debt sought here was always owed to Bryant Associates, not to the government, as was the case in *In re Marcano*. For these reasons, the Court finds that Bryant Associates is not a governmental unit subject to section 525(a).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that (i) Bryant Associates is not a governmental unit subject to section 525(a); (ii) the stay imposed by this Court is lifted; and (iii) Bryant Associates may continue with its pending State Court Eviction Proceeding based on the prepetition and post-petition rent arrears.

Because the consequences for the Debtor of lifting the stay are severe (*i.e.*, the threat of eviction from the apartment she shares with her daughter), and because bankruptcy court decisions on the underlying issue are split, the Court stays the effect of its ruling for fourteen

(14) days from the date of this Opinion to allow the Debtor to file an appeal and seek a further

stay from the district court if she decides to pursue an appeal.

       **IT IS SO ORDERED.**

Dated:     January 23, 2020
            New York, New York

                *Martin Glenn*

                MARTIN GLENN
          United States Bankruptcy Judge